UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 07-20327 |
| Plaintiff, | HONORABLE JULIAN ABELE COOK, JR. |
| -vs- | OFFENSE(S): |
| D-1 ROY M. BAILEY, | Count Four: Conspiracy to Defraud the United States;<br>Count Five: Misprision of Felony;<br>Count Six: Conspiracy to Commit Bribery; |
| Defendant. | MAXIMUM PENALTY:<br>Count Four:<br>Up to 5 years imprisonment.<br>Count Five:<br>Up to 3 years imprisonment;<br>Count Six:<br>Up to 5 years imprisonment; |
| | MAXIMUM FINE:<br>Count Four: Up to $250,000.00;<br>Count Five: Up to $250,000.00;<br>Count Six: Up to $250,000.00. |

## RULE 11 PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, defendant ROY M. BAILEY and the government agree as follows:

1. **GUILTY PLEA**

    A. **Count(s) of Conviction**

    Defendant will enter a plea of guilty to **Count Four, Count Five and Count Six** of the First Superseding Indictment. Count Four charges Conspiracy to Defraud the United States, in violation of Title 18, United States Code, Section 371. Count Five charges Misprision of Felony, in violation of Title 18, United States Code, Section 4. Count Six charges Conspiracy to Commit Bribery, in violation of Title 18, United States Code, Sections 201 and 371.

    B. **Elements of Offense(s)**

    The elements of **Count Four** (conspiracy to defraud the United States) are:

    (1) That two or more persons conspired or agreed to defraud the United States, or one of its agencies or departments, by dishonest means;

    (2) That the defendant knowingly and voluntarily joined that conspiracy; and

    (3) That a member of the conspiracy did one or more of the overt acts set forth in Count Four of the First Superseding Indictment for the purpose of advancing or helping the conspiracy.

The elements of **Count Five** (misprision of felony) are:

(1) That a felony cognizable by a Court of the United States was committed by someone other than the defendant;

(2) That the defendant had actual knowledge of that fact;

(3) That the defendant failed to notify the relevant authorities;

(4) That the defendant deliberately took affirmative steps to conceal the commission of the crime.

The elements of **Count Six** (conspiracy to commit bribery) are:

(1) That the defendant and one or more other persons knowingly and willfully agreed and conspired to commit an offense against the United States, that is, bribery of a public official. Specifically, the defendant, being a public official, agreed and conspired with others, directly and indirectly, to corruptly demand, seek, receive and accept, and to agree to receive and to accept, one or more things of value, in return for being influenced to allow any fraud, or make opportunity for the commission of any fraud, on the United States.

(2) The defendant knew the purpose of the conspiracy or agreement and deliberately, knowingly and wilfully joined the conspiracy or agreement.

(3) At some time during the existence or life of the conspiracy or agreement,

one of its members knowingly performed one of the overt acts charged in Count Six of the Superseding Indictment, in order to further or advance the purpose of the conspiracy or agreement.

### C. <u>Factual Basis for Guilty Plea</u>

The parties agree that the following facts provide a sufficient and accurate basis for defendant's guilty pleas.

#### i) Count Four - Conspiracy to Defraud the United States

Starting in or before January of 2001 and continuing through in or after June of 2003, Talal Chahine, Mohammad Arzouni and others agreed and conspired to defraud the United States, that is, to obtain immigration benefits for one or more employees and associates of Talal Chahine on the basis of dishonest means through false and fraudulent pretenses and representations made to the U.S. Immigration and Naturalization Service, subsequently known as U.S. Citizenship and Immigration Services.

As part of that conspiracy and agreement, in September of 1999, Momamad Arzouni, a native of Lebanon, and an employee and associate of Talal Chahine, entered into a fraudulent marriage with a citizen of the United States, hereafter identified as "Priscilla T.," solely for the purpose of evading the immigration laws of

the United States.

As part of that conspiracy, in or about September of 1999, Mohamad Arzouni paid and agreed to pay in excess of $1,000.00 in U.S. currency to Priscilla T. in return for her agreement to marry Mohamad Arzouni.

As part of that conspiracy, in January of 2000, Mohamad Arzouni filed and caused to be filed an Application to Register Permanent Residence or Adjust Status with the U.S. Immigration and Naturalization Service, based upon his fraudulent marriage to Priscilla T.

As part of that conspiracy, in and after January of 2001, Mohamad Arzouni contacted co-defendant Talal Chahine to request assistance from Talal Chahine in obtaining Permanent Residence Status based upon Mohamad Arzouni's fraudulent marriage to Priscilla T.  Thereafter, Talal Chahine contacted ROY M. BAILEY to request assistance from ROY M. BAILEY in obtaining Permanent Residence Status for Mohamad Arzouni based upon his fraudulent marriage to Priscilla T.

As part of that conspiracy and agreement, and to advance the purpose of that conspiracy, in and before March of 2001, ROY M. BAILEY provided false and fraudulent information to a District Adjudication Officer with the Immigration and Naturalization Service in order to cause the approval of the Application to Register Permanent Residence or Adjust Status filed by Mohamad Arzouni.

As part of that conspiracy and agreement, and to advance the purpose of that conspiracy, in February of 2003, Mohamad Arzouni filed a Petition to Remove the Conditions on Residence with the U.S. Immigration and Naturalization Service, based upon the fraudulent marriage with Priscilla T.

At all times relevant, ROY M. BAILEY acted knowingly, wilfully and deliberately.

### ii) Count Five - Misprision of Felony

Between August of 1999 and March of 2003, ROY M. BAILEY held the position of Assistant District Director of the U.S. Immigration and Naturalization Service (INS) office in Detroit, Michigan. Between March of 2003 and February of 2004, ROY M. BAILEY held the position of Acting Field Office Director for Detention and Removal Operations of the U.S. Department of Homeland Security - Immigration and Customs Enforcement (DHS-ICE) office in Detroit, Michigan.

In his position as INS Assistant District Director and, thereafter, as DHS-ICE Acting Field Office Director, ROY M. BAILEY supervised the custody and transportation of immigration aliens and their property pending the completion of their deportation proceedings and removal from the United States. ROY M. BAILEY supervised numerous INS and ICE employees, including Detention Enforcement Officers and Deportation Officers assigned to the INS/ICE office in Detroit, Michigan.

ROY M. BAILEY also supervised the operation of the INS/ICE detention facility located in Monroe, Michigan.

Between 2000 and 2004, Patrick Wynne was employed as a Detention Enforcement Officer assigned to the INS/ICE office in Detroit, Michigan. As part of his official duties, in or about 2000, Patrick Wynne was assigned as the Property Officer for the INS/ICE detention facility in Monroe, Michigan. As the INS/ICE Property Officer, Patrick Wynne took custody of numerous items of personal property, including U.S. and foreign currency, credit cards, jewelry and personal electronics that were found on the person or in the possession of individual aliens when they were taken into INS/ICE custody.

As the INS/ICE Property Officer, it was the duty of Patrick Wynne to maintain control over all items of personal property, including all valuables, taken from each alien who was placed into custody at the INS/ICE detention facility in Monroe, Michigan. As the Property Officer, it was also the duty of Patrick Wynne to ensure that the property was returned to the individual alien upon his or her deportation from the United States or other release from INS/ICE custody.

Between 2000 and February of 2004, Patrick Wynne stole, embezzled and converted to his own use over $300,000.00 in U.S. Currency, which monies had been placed under his control as the Property Officer of the INS/ICE detention facility

in Monroe, Michigan. The subject U.S. Currency was embezzled and stolen by Patrick Wynne from bags of personal property belonging to more than 300 separate INS/ICE detainees. In doing so, Patrick Wynne committed multiple felony violations of Title 18, United States Code, Section 654 (Officer or employee of the United States converting property of another) cognizable by a Court of the United States. At all times relevant, Patrick Wynne worked in the INS/ICE section that was supervised by ROY M. BAILEY.

In or about September of 2003, two employees assigned to the Detention and Removal section of the INS/ICE office in Detroit, Michigan, met in person with ROY M. BAILEY. During that meeting, the two employees presented documents and other information showing that Officer Patrick Wynne was engaged in a pattern of conversion, embezzlement and theft of property belonging to numerous detained aliens housed at the INS/ICE detention facility in Monroe, Michigan. After being presented with that information, ROY M. BAILEY told the two employees: "I'll take care of it."

At the time of the meeting in September of 2003, ROY M. BAILEY was the senior official at the INS/ICE office in Detroit, Michigan charged with detention and deportation of immigration aliens. In telling the two employees, "I'll take care of it," ROY M. BAILEY acted affirmatively in dissuading the two DHS-ICE employees from

reporting Patrick Wynne's thefts to the Office of Professional Responsibility, the Office of Inspector General, the Federal Bureau of Investigation or any other law enforcement agency. In doing so, ROY M. BAILEY acted affirmatively to conceal the felony embezzlements and thefts committed by Patrick Wynne.

At no time after receiving the relevant information in September of 2003, did ROY M. BAILEY report the felony thefts and embezzlements by Patrick Wynne to the relevant authorities.

In February of 2004, investigating agents from the Office of Inspector General and the Federal Bureau of Investigation seized over 100 INS/ICE property bags during a search of the residence of Patrick Wynne located in Milan, Michigan. The subject property had been stolen from the INS/ICE detention facility in Monroe, Michigan.

### iii) Count Six - Conspiracy to Commit Bribery

Starting in or before January of 2000 and continuing through in or after February of 2004, defendant ROY M. BAILEY agreed and conspired with attorney Namir Daman and others to commit the offense of bribery of a public official. At the time, ROY M. BAILEY held the position of Assistant District Director for the Detroit office of the U.S. Immigration and Naturalization Service (INS) and, thereafter, of

Acting Field Office Director for Detention and Removal in the Detroit office of the U.S. Department of Homeland Security, Immigration and Customs Enforcement (DHS-ICE). As the INS Assistant District Director and, thereafter, as the acting DHS-ICE Field Office Director, ROY M. BAILEY was a public official who supervised the custody and transportation of immigration aliens pending the completion of their deportation and removal proceedings.

As part of the subject conspiracy, between 2000 and 2004, Namir Daman corruptly promised, offered and gave to ROY M. BAILEY, and ROY M. BAILEY corruptly received and agreed to receive from Namir Daman, one or more things of value. The subject things of value included $1,500.00 in funds paid by Namir Daman in October of 2001 to a private attorney in Rochester, Michigan who was then representing ROY M. BAILEY. The subject things of value also included landscaping services valued at more than $500.00, which services were provided in September of 2003, by clients of Namir Daman, at a residence located in Romulus, Michigan owned by Roy M. Bailey.

As part of the subject conspiracy, between October of 2000 and February of 2004, ROY M. BAILEY used his official position to allow Namir Daman to obtain through fraud numerous immigration and naturalization benefits for clients of Namir Daman, and otherwise made opportunities for Namir Daman to commit fraud on the

Immigration and Naturalization Service and, thereafter, the U.S.Citizenship and Immigration Services.

As part of the subject conspiracy, in and after January of 2001, ROY M. BAILEY knowingly allowed Namir Daman to seek immigration benefits based upon false and fraudulent representations made on behalf of a client of Namir Daman herein referred to as "Hanadi H." Specifically, Namir Daman was allowed to obtain an adjustment to lawful residence of the United States for "Hanadi H." based upon a fraudulent marriage to a United States citizen.

As part of the subject conspiracy and agreement, in September of 2002, ROY M. BAILEY failed to deport a client of Namir Daman herein referred to as "B. Farraj," who was then subject to a Final Order of Deportation.

As part of the subject conspiracy and agreement, in October of 2003, ROY M. BAILEY failed to deport a client of Namir Daman herein referred to as "N. Younan" who was then subject to a Final Order of Deportation. In and after October of 2003, attorney Namir Daman obtained and attempted to obtain immigration benefits for "N. Younan" based upon a false and fraudulent representations made to U.S. Immigration and Citizenship Services.

At all times relevant between January of 2000 and February of 2004, ROY M. BAILEY acted knowingly, wilfully and deliberately.

2.  **SENTENCING GUIDELINES**

   A.  **Standard of Proof**

   The Court will find sentencing factors by a preponderance of the evidence.

   B.  **Agreed Guideline Range**

   The parties agree on all sentencing factors except the following: the applicable advisory guideline range for Count Five of the Superseding under USSG §§ 2X1.1 and 2B1.1, including the total loss amount and the total number of victims for which defendant ROY M. BAILEY can be held accountable. There are no other sentencing guideline disputes. Except as provided below, defendant's guideline range is **30-37** months, as set forth on the attached worksheets. If the Court finds:

   a) that defendant's criminal history category is higher than reflected on the attached worksheets, or

   b) that the offense level should be higher because, after pleading guilty, defendant made any false statement to or withheld information from his probation officer; otherwise demonstrated a lack of acceptance of responsibility for his offense(s); or obstructed justice or committed any crime,

and if any such finding results in a guideline range higher than **30-37 months**, the

higher guideline range becomes the agreed range. However, if the Court finds that defendant is a career offender, an armed career criminal, or a repeat and dangerous sex offender as defined under the sentencing guidelines or other federal law, and that finding is not already reflected in the attached worksheets, this paragraph does *not* authorize a corresponding increase in the agreed range.

Neither party may take a position concerning the applicable guidelines that is different than any position of that party as reflected in the attached worksheets, except as necessary to the Court's determination regarding subsections a) and b), above.

3. **SENTENCE**

The Court will impose a sentence pursuant to 18 U.S.C. §3553, and in doing so must consider the sentencing guideline range.

### A. Imprisonment

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) the sentence of imprisonment in this case may not exceed the top of the sentencing guideline range as determined by Paragraph 2B.

### B. Supervised Release

A term of supervised release, if imposed, follows the term of imprisonment.

There is no agreement on supervised release. In other words, the Court may impose any term of supervised release up to the statutory maximum term, which in this case is **not more than 2 years**. The agreement concerning imprisonment described above in Paragraph 3A does not apply to any term of imprisonment that results from any later revocation of supervised release.

C. **Special Assessment**

Defendant will pay a special assessment of **$300.00** and must provide the government with a receipt for the payment before sentence is imposed.

D. **Fine**

Pursuant to USSG § 5E1.2, a fine of between $7,500.00 and $75,000.00 shall be imposed in this matter.

E. **Restitution**

Restitution is not applicable to this case.

4. **Cooperation Agreement**.

The written cooperation agreement between defendant and the government, which is dated August 1, 2008, is part of this plea agreement.

5. **OTHER CHARGES**

Upon defendant being sentenced for Counts Four, Five and Six of the Superseding Indictment, the government agrees to dismiss Counts One, Two, Three, Seven, Eight and Nine of the Superseding Indictment with respect to defendant Roy M. Bailey. The parties agree that the conduct charged in the dismissed counts may be considered as relevant conduct in fashioning the advisory guideline range in this matter.

6. **EACH PARTY'S RIGHT TO WITHDRAW FROM THIS AGREEMENT**

The government may withdraw from this agreement if the Court finds the correct guideline range to be different than is determined by Paragraph 2B.

Defendant may withdraw from this agreement, and may withdraw his guilty plea, if the Court decides to impose a sentence higher than the maximum allowed by Part 3. This is the only reason for which defendant may withdraw from this agreement. The Court shall advise defendant that if he does not withdraw his guilty plea under this circumstance, the Court may impose a sentence greater than the maximum allowed by Part 3.

7. <u>RIGHT TO APPEAL</u>

If the sentence imposed falls within or below the guideline range determined pursuant to Paragraph 2B, above, defendant waives any right to appeal his conviction or sentence. If the sentence imposed is above that range, defendant retains his right to directly appeal the Court's sentencing determination. The government agrees not to appeal any sentence within the guideline range it has recommended in Paragraph 2B, but retains the right to appeal any determination by the Court to apply a lower guideline range.

8. <u>CONSEQUENCES OF WITHDRAWAL OF GUILTY PLEA(S) OR VACATION OF CONVICTION(S)</u>

If defendant is allowed to withdraw his guilty plea or if any conviction entered pursuant to this agreement is vacated, the Court shall, on the government's request, reinstate any charges that were dismissed as part of this agreement. If additional charges are filed against defendant within six months after the date the order vacating defendant's conviction or allowing him to withdraw his guilty plea(s) becomes final, which charges relate directly or indirectly to the conduct underlying the guilty plea(s) or to any conduct reflected in the attached worksheets, defendant waives his right to challenge the additional charges on the ground that they were not

filed in a timely manner, including any claim that they were filed after the applicable limitations period expired.

## 9. PARTIES TO PLEA AGREEMENT

Unless otherwise indicated, this agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

## 10. SCOPE OF PLEA AGREEMENT

This agreement, which includes all documents that it explicitly incorporates, is the complete agreement between the parties. It supersedes all other promises, representations, understandings, and agreements between the parties concerning the subject matter of this plea agreement that are made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to defendant or to the attorney for defendant at any time before defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this agreement.

This agreement does not limit or prevent any civil or administrative actions against defendant, or any forfeiture claim against any property, by the United States or any other party.

11. ACCEPTANCE OF AGREEMENT BY DEFENDANT

This plea offer expires unless it has been received, fully signed, in the Office of the United States Attorney by **5:00 P.M. on September 16, 2008**. The government reserves the right to modify or revoke this offer at any time before defendant pleads guilty.

STEPHEN J. MURPHY
United States Attorney

_____
LYNN HELLAND
ASSISTANT UNITED STATES ATTORNEY
CHIEF, SPECIAL PROSECUTIONS UNIT

_____
BRUCE C. JUDGE
ASSISTANT UNITED STATES ATTORNEY
SPECIAL PROSECUTIONS UNIT

DATE: 9.10.08

BY SIGNING BELOW, DEFENDANT ACKNOWLEDGES THAT HE HAS READ (OR BEEN READ) THIS ENTIRE DOCUMENT, UNDERSTANDS IT, AND AGREES TO ITS TERMS. HE ALSO ACKNOWLEDGES THAT HE IS SATISFIED WITH HIS ATTORNEY'S ADVICE AND REPRESENTATION. DEFENDANT AGREES THAT HE HAS HAD A FULL AND COMPLETE OPPORTUNITY TO CONFER WITH HIS LAWYER, AND HAS HAD ALL OF HIS QUESTIONS ANSWERED BY HIS LAWYER.

_____
MICHAEL STARR, ESQ.
ATTORNEY FOR DEFENDANT

_____
ROY M. BAILEY
DEFENDANT

DATE: 9/16/08